USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 10/30/2026

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------------X

James Farner,
*Individually, and as a*
*Parent and Natural Guardian of E.F.,*
*an Infant,*

Plaintiff,

-against-

Jennifer Leong et al.,

Defendants.

-------------------------------------------------------------X

25-cv-09383-VR

**REDACTED OPINION & ORDER**

**VICTORIA REZNIK, United States Magistrate Judge:**

Before the Court is the parties' joint motion for approval of an infant compromise settlement and their accompanying letter motion to seal their submissions. (ECF Nos. 57–58). For the reasons below, both motions are **GRANTED**.

## BACKGROUND

Plaintiff is the father of E.F., a child born in 2018. (Pl.'s Pet. at 1 ¶ 1, ECF No. 58-3). In August 2024, E.F. injured her left arm in a playground fall. (Pl.'s Second Am. Compl. at 1 ¶ 1, ECF No. 53). She was admitted to Defendant Westchester County Medical Center (WMC), where doctors diagnosed a fracture requiring surgery. (*Id.* at 1–2 ¶¶ 2–3). Defendant Jennifer Leong performed the surgery, which was purportedly successful. (*Id.* at 2–3 ¶¶ 5–6). But in June 2025, after multiple follow-up examinations and testing, doctors allegedly determined

that E.F.'s left elbow remained dislocated, her injuries had not fully healed, and the prolonged dislocation had caused permanent damage. (*Id.* at 3–5 ¶¶ 7–13).

Plaintiff filed this medical malpractice action in November 2025 against Leong, WMC, and Defendant Westchester County Health Care Corporation (WCHCC). (Pl.'s Compl. at 5–8 ¶¶ 21–34, ECF No. 1). He later added Defendant Damon DelBello, another doctor who allegedly treated E.F.'s injuries, and Defendant Westchester Medical Center Advanced Physician Services, P.C. (APS). (Pl.'s Second Am. Compl., ECF No. 53). The operative complaint asserts medical malpractice claims against all defendants and vicarious liability and corporate negligence claims against WMC, WCHCC, and APS. (*Id.* at 6–11 ¶¶ 24–43).

In October 2026, the parties reported a settlement and their intention to seek approval of an infant compromise. (Order, ECF No. 56). The Court directed them to file a joint motion complying with Local Civil Rule 83.2(a). (*Id.*). The parties timely filed that motion and an accompanying motion to seal it. (ECF Nos. 57–58).

## DISCUSSION

### I. Plaintiff has satisfied all of the procedural requirements.

In this District, a claim brought on behalf of an infant may not be settled without court approval. *See* S.D.N.Y. R. 83.2(a)(1) ("An action by or on behalf of an infant or incompetent person must not be settled or compromised, or voluntarily discontinued, dismissed, or terminated without leave of the court embodied in an order, judgment, or decree."); *see also B.G. v. City of New York*, 23-CV-3761 (KPF), 2026 WL 17163, at *3 (S.D.N.Y. Jan. 2, 2026) (citing S.D.N.Y. Local Civil Rule

83.2(a)(1) in resolving request for infant compromise orders). The proceedings "must conform, as much as possible, to the New York State statutes and rules." S.D.N.Y. R. 83.2(a)(1). But a court "may dispense with any New York State requirement" for good cause. *Id.*

New York law imposes three relevant procedural requirements. First, the infant's parent or guardian must submit an affidavit identifying the parties, describing the claim and injuries, disclosing relevant expenses and reimbursements, setting out the settlement terms, and indicating whether they approve of the settlement. *See* N.Y. C.P.L.R. 1208(a)(1)–(8) (listing eight pieces of information that must be contained within affidavit from infant's representative). Second, if the infant's representative is represented by an attorney, that attorney must also submit an affidavit describing, among other things, the work they performed and why the settlement should be approved. *See* N.Y. C.P.L.R. 1208(b)(1)–(3) (listing three pieces of information that must be contained within affidavit from attorney representing infant's representative). Third, and finally, where, like here, the action seeks damages for personal injuries, the papers must include "medical or hospital reports." N.Y. C.P.L.R. 1208(c) ("If the action or claim is for damages for personal injuries to the infant or incompetent, one or more medical or hospital reports, which need not be verified, shall be included in the supporting papers.").

Plaintiff's submissions satisfy these requirements. First, his sworn petition identifies him as E.F.'s father and natural guardian, provides their Florida residence, and states that E.F. was born in 2018 and is eight years old. (Pl.'s Pet. at

1 ¶ 1, ECF No. 58-3). It recounts E.F.'s playground injury, the allegedly uncorrected elbow dislocation, subsequent surgeries, and persistent loss of elbow and forearm function. It also describes her continuing difficulties with writing, piano, ballet, and swimming, as well as pain, scarring, and an uncertain prognosis. (*Id.* at 1–3 ¶¶ 2–7). The petition itemizes medical charges, explains that insurance and family payments covered treatment, confirms that no medical bills or liens remain outstanding, and identifies both litigation expenses already advanced by Plaintiff and those still due. (*Id.* at 3–4 ¶¶ 8–10). It discloses the proposed [REDACTED] settlement and distribution: [REDACTED] in attorney's fees, [REDACTED] in outstanding litigation expenses, [REDACTED] reimbursing Plaintiff for litigation expenses previously paid, and [REDACTED] held in trust exclusively for E.F.'s benefit. (*Id.* at 5 ¶¶ 13–16). Plaintiff approves the settlement, explains that his individual claim will be resolved without a separate payment, and states that neither he nor E.F. has received other compensation for the occurrence, apart from the disclosed insurance payments. (*Id.*). He further confirms that no prior application for approval has been made. (*Id.* at 7 ¶ 21).

Second, counsel's sworn affirmation details his investigation, review of medical records, consultation with experts, pleadings, discovery, court appearances, and settlement negotiations. (Att'y Affirmation at 4 ¶ 12, ECF No. 58-9). It explains why the guaranteed recovery is preferable to further litigation, particularly given the risks of proving malpractice-related causation and damages. (*Id.* at 5 ¶ 16). It discloses the retainer and statutory sliding-scale fee calculation, itemizes litigation

expenses, and confirms the absence of liens, adverse-party involvement or compensation, and prior applications. (*Id.* 4–6 ¶¶ 13–14, 18–22). Finally, counsel identifies and attaches hospital and treatment records from WMC, Hospital for Special Surgery, and Shriners Hospital for Children, including the treating physician's records. (*Id.* at 2–3 ¶¶ 5, 9–10 & Exs. B–D). The submissions therefore meet the documentary requirements of CPLR 1208(a)–(c).

## II. __There is good cause to forgo a hearing.__

New York law generally requires the infant, the infant's attorney, and the party seeking settlement to appear in court for a hearing. N.Y. C.P.L.R. 1208(d). That hearing allows the Court to, among other things, assess the infant's injuries firsthand. *See B.G.*, 2026 WL 17163, at *3 (explaining that "the long-time practice" in New York courts was to have infant appear because it "permits the Court to determine the extent of any injuries suffered, among other purposes" (citation modified)). But New York law allows a court to forgo a hearing if there is "good cause" for doing so. N.Y. C.P.L.R. 1208(d) (explaining that hearing must occur "unless attendance is excused for good cause").

To determine whether good cause exists, a court considers "whether the infant's appearance is necessary for a proper determination of settlement, and whether it would constitute a particular or unnecessary hardship if attendance is required." *B.G.*, 2026 WL 17163, at *3 (internal quotation marks and citation omitted) (explaining New York State court standard for good cause). In doing so, courts often evaluate multiple factors such as (1) "the nature and extent of the

injuries;" (2) the infant's age; (3) "the amount of the settlement in relation to the injuries sustained;" and (4) "the nature of the hardship involved in having the infant appear in court." *McInnis v. City of New York*, 24-CV-03449 (GHW) (RFT), 2025 WL 1565382, at *4 (S.D.N.Y. June 3, 2025) (citation modified) (identifying factors New York courts use to analyze good cause and explaining that federal courts subsequently consider the same factors).

Here, requiring E.F. to appear for a hearing would impose an unnecessary hardship on her and her father. A hearing would require them to travel thousands of miles from their home in Florida, causing E.F. to miss days of school. And it would require E.F. to describe in her own words the pain she suffered during her post-injury recovery, which would likely be overwhelming for someone her age. This Court sees no need for imposing such a burden on E.F. and her family. *See B.G.*, 2026 WL 17163, at *6 (finding hearing would constitute hardship because "it would require [plaintiffs] to recount their emotional distress and would also require them to miss school unless the hearing were deferred until a school holiday"); *Melendez v. Ethical Culture Fieldston Sch.*, No. 23 Civ. 4917 (JPO) (SLC), 2026 WL 2445118, at *1 (S.D.N.Y. Aug. 20, 2026) ("[R]equiring Y.S. to attend a hearing could be overwhelming and could cause her to miss school or other important activities.").

Nor would E.F.'s appearance materially assist the Court. The pleadings, petition, affirmation, and medical records adequately describe her injuries and their effects. *See Estate of Doe v. N.Y. City Dep't of Soc. Servs.*, No. 93 Civ. 8385(JFK)(MHD), 1995 WL 619864, at *2 n.2 (S.D.N.Y. Oct. 23, 1995) (finding

hearing unnecessary "in view of the completeness of the written submissions"). Observing her injured arm in person would add little to the assessment of whether the settlement is fair, reasonable, adequate, and in her best interest. And given E.F.'s young age, she is also "unlikely to have independent views about the settlement terms." *B.G.*, 2026 WL 17163, at *6.

Thus, there is good cause to forgo a hearing on this proposed infant compromise. *See id.* (forgoing hearing after finding good cause existed because hearing was not required for assessing reasonableness of proposed settlement and "would cause unwarranted hardship"); *Melendez*, 2026 WL 2445118, at *1 (similar).

### III. <u>The proposed infant compromise is fair, reasonable, and adequate.</u>

"[A] court cannot approve a proposed infant compromise unless it is fair, reasonable, and adequate, based on a comparison of the terms of the compromise with the likely rewards of litigation." *Orlander v. McKnight*, No. 12 Civ. 4745(HBP), 2013 WL 4400537, at *3 (S.D.N.Y. Aug. 15, 2013) (internal quotation marks and citations omitted); *see Martegani v. Cirrus Design Corp.*, 687 F. Supp. 2d 373, 377 (S.D.N.Y. 2010) ("[A] court must evaluate whether the proposed settlement is fair and reasonable and in the infant plaintiff's best interests." (internal quotation marks and citations omitted)). And courts have "broad discretion" in making this determination. *Wagner & Wagner, LLP v. Atkinson, Haskins, Nellis, Brittingham, Gladd & Carwile, P.C.*, 596 F.3d 84, 89 (2d Cir. 2010) ("District courts have broad discretion when conducting an infant compromise hearing.").

"There is no bright-line test for concluding that a particular settlement is fair." *McInnis*, 2025 WL 1565382, at *4 (internal quotation marks and citation omitted). Instead, "a court must form an educated estimate of the complexity, expense, and likely duration of such litigation and all other factors relevant to a full and fair assessment of the wisdom of the proposed compromise." *Martegani*, 687 F. Supp. 2d at 377 (citation modified).[1]

But there is a presumption that a settlement is fair and reasonable if: (1) it was reached after an "arm's length negotiation" and "is not collusive;" (2) the parties are represented by "counsel experienced in similar cases;" and (3) sufficient discovery occurred during the litigation "to enable counsel to act intelligently." *McInnis*, 2025 WL 1565382, at *5 (internal quotation marks and citation omitted). And there is an additional presumption that a settlement "negotiated by an infant's natural guardian is presumptively fair and in the best interests of the child." *Id.* (explaining that presumption is "well-settled").

The record supports both presumptions here. Although the motion papers do not expressly address how each of the elements regarding arm's length negotiations, counsel's experience, and sufficient discovery are satisfied, a review of the circumstances reveals that each one exists. And there is no indication to the contrary. It appears that this settlement was reached after an arm's length

[1] "These other factors include: the stage of the proceedings and the amount of discovery completed; the risks of establishing liability; the risks of establishing damages; the ability of the defendants to withstand a greater judgment; the range of reasonableness of the settlement fund in light of the best possible recovery; and the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation." *McInnis*, 2025 WL 1565382, at *4.

negotiation by counsel experienced in this subject matter, and that the settlement is not collusive. This litigation was also far enough into fact discovery that the parties and their counsel could engage intelligently in settlement discussions, which is evidenced by the requests for production, interrogatories, and deposition notices filed on the docket and this Court's conversations with the parties at a recent conference on August 25, 2026. (Min. Entry for 08/25/2026; ECF Nos. 32–35, 40–42). *See McInnis*, 2025 WL 1565382, at *6 (finding settlement presumptively fair because "it is the product of arms'-length negotiation" and "occurred after paper discovery was substantially complete"); *T.H. v. N.Y.C. Dep't of Educ.*, 99 F. Supp. 3d 394, 397 (S.D.N.Y. 2015) (finding settlement presumptively fair, in part, because "parties were engaged in discovery at the time settlement discussions began").

Plaintiff, the infant's father and natural guardian, also approves of the settlement. (Pl.'s Pet. at 5 ¶ 13, ECF No. 58-3) ("I believe this settlement is fair, reasonable[,] and in E.F.'s best interests."). *See B.G.*, 2026 WL 17163, at *6 (finding settlement presumptively fair and reasonable because infant's parents were "proponents of the settlement"); *McInnis*, 2025 WL 1565382, at *6 (similar); *T.H.*, 99 F. Supp. 3d at 397 (similar); *Orlander*, 2013 WL 4400537, at *5 (similar).

Even apart from the presumptions, "[t]he alternative to a settlement would be a very expensive and protracted litigation." *B.G.*, 2026 WL 17163, at *7. This medical malpractice action would likely require costly expert discovery, reports, and depositions. Plaintiff would also have to establish causation and distinguish injuries attributable to the alleged malpractice from those caused by the original fall. These

difficulties create meaningful risks both to liability and to the amount recoverable at trial.

Based on the applicable presumptions, litigation risks, and the "comparison of the terms of the compromise with the likely rewards of litigation," the terms of the settlement are "fair, reasonable, and adequate." *See B.G.*, 2026 WL 17163, at *6–7 (internal quotation marks and citation omitted) (finding infant compromise fair, reasonable, and adequate after analyzing presumptions and alternative to settlement); *Orlander*, 2013 WL 4400537, at *4–6 (similar).

**IV. <u>The attorney's fees and expenses sought are reasonable.</u>**

Local Civil Rule 83.2 requires the Court to review the reasonableness of attorneys' fees in an infant compromise. *See Sanchez v. MTV Networks*, No. 10 Civ. 7854(TPG), 2012 WL 2094047, at *2 (S.D.N.Y. June 11, 2012) ("When approving an infant's compromise, the court has an obligation to approve the reasonableness of attorney's fees."), *aff'd*, 525 F. App'x 4 (2d Cir. 2013). The Court has "broad authority" to make that determination. *Wagner & Wagner, LLP*, 596 F.3d at 89 ("[B]oth the Local Civil Rules and New York state law grant broad authority to determine the reasonableness of attorney's fees.").

Where, like here, the fee arrangement is based on contingency, such arrangements "are to be treated by the Court as advisory only." *Campbell v. City of New York*, No. 15 Civ.2088(PAE), 2015 WL 7019831, at *4 (S.D.N.Y. Nov. 10, 2015) (internal quotation marks and citations omitted). The reasonableness analysis instead remains focused on "whether there was suitable compensation for the

attorney for his service on behalf of the infant." *McInnis*, 2025 WL 1565382, at *5 (citation modified). And that analysis follows the traditional fee-reasonableness formula articulated by the Second Circuit in *Arbor Hill Concerned Citizens Neighborhood Association v. County of Albany*, 522 F.3d 182 (2d Cir. 2008) [hereinafter *Arbor Hill*]. *See McInnis*, 2025 WL 1565382, at *5. "[A] reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate," which is typically informed by prevailing market rates. *Id.* (internal quotation marks and citations omitted).[2]

Here, Plaintiff's counsel submitted the relevant retainer agreement detailing the contingency fee arrangement (Retainer, ECF No. 58-24), along with an invoice and expense statements (ECF Nos. 58-6, 58-25). But he provided no hours worked, hourly rates, or evidence of prevailing market rates, which limits the Court's ability to apply the usual reasonableness analysis. *See Martegani*, 687 F. Supp. 2d at 378 ("While an attorney who represents a client on a contingency fee basis may not maintain contemporaneous time records, the absence of such records frustrates a court in its effort to evaluate the fairness and reasonableness of a proposed settlement, including legal fees, when an infant's claim is compromised."); *cf.*

[2] In *Arbor Hill*, the Second Circuit also identified multiple factors that should be considered by courts in making the required reasonableness determination. Those factors include: "the complexity and difficulty of the case, the available expertise and capacity of the client's other counsel (if any), the resources required to prosecute the case effectively (taking account of the resources being marshaled on the other side but not endorsing scorched earth tactics), the timing demands of the case, whether an attorney might have an interest (independent of that of his client) in achieving the ends of the litigation or might initiate the representation himself, whether an attorney might have initially acted *pro bono* (such that a client might be aware that the attorney expected low or non-existent remuneration), and other returns (such as reputation, etc.) that an attorney might expect from the representation." *Arbor Hill*, 522 F.3d at 184.

*McInnis*, 2025 WL 1565382, at *6 (finding attorney's fees were reasonable in contingency fee arrangement after plaintiffs submitted evidence of hours worked, hourly billing rate, and prevailing market rate); *Campbell*, 2015 WL 7019831, at *5 (similar). "In such a circumstance, reducing the amount sought for attorney's fees is appropriate." *Martegani*, 687 F. Supp. 2d at 378 (reducing proposed contingency fee of 28% after attorney failed to submit contemporaneous time records).

Although E.F.'s guardian approves of the fee (Pl.'s Pet. at 4 ¶ 12, ECF No. 58-3), his approval is only advisory. *See McInnis*, 2025 WL 1565382, at *5 ("The agreement to a proposed attorney fee by the guardian of an infant plaintiff is not sufficient to approve the fee, because the fee must be fixed by the court and any agreement of the guardian is advisory only." (internal quotation marks and citations omitted)).

Nevertheless, "contingency fee arrangements providing for attorney's fees of one-third have been routinely approved." *Orlander*, 2013 WL 4400537, at *8 (explaining that one-third rate was "usual and customary" contingency fee (internal quotation marks and citation omitted)); *Appling v. City of New York*, 25-CV-2908 (KHP), 2025 WL 2922834, at *4 (S.D.N.Y. Oct. 14, 2025) ("Contingency awards of one-third of the plaintiff's recovery are common in similar cases in this jurisdiction."). The attorney's fees sought here represent just 18% of the total settlement amount (Pl.'s Pet. at 4 ¶ 12, ECF No. 58-3; Att'y Affirmation at 5–6 ¶¶ 20–22, ECF No. 58-9), which is well below the more common 33%. Thus, the attorney's fees are reasonable. *See Appling*, 2025 WL 2922834, at *4 (finding

contingency fee of 33% reasonable); *C.G. v. Dep't of Educ. of City of N.Y.*, 1:24-cv-03827 (SDA), 2025 WL 1078896, at *3 (S.D.N.Y. Apr. 10, 2025) (similar). And the expenses for which Plaintiff seeks reimbursement are also "standard litigation expenses." *See C.G.*, 2025 WL 1078896, at *3 (approving additional expenses after finding expenses for "filing fee, records costs, translation services and[,] expert costs" were reasonable).

Notably, the requested fee is also supported by New York's statutory sliding scale for medical-malpractice recoveries. *See* N.Y. Judiciary Law § 474-a. Under the parties' retainer agreement, counsel receives 30% of the first $250,000 recovered, 25% of the next $250,000, 20% of the next $500,000, 15% of the next $250,000, and 10% of the amount above $1,250,000, after deduction of chargeable litigation expenses. (Att'y Affirmation at 4 ¶ 13, 5–6 ¶ 20, ECF No. 58-9; Retainer, ECF No. 58-24). Counsel deducted [REDACTED] in litigation expenses from the [REDACTED] settlement, leaving [REDACTED] as the fee base. Applying the statutory tiers yields [REDACTED], respectively, for a total fee of [REDACTED]. (Att'y Affirmation at 5–6 ¶¶ 20–22, ECF No. 58-9). Counsel seeks neither an enhanced fee nor interest on disbursements, although the retainer agreement permits both. (*Id.* at 5 ¶ 20). Although compliance with the statutory schedule does not relieve the Court of its independent duty to assess reasonableness, it provides an additional basis for finding the requested fee appropriate here.

**CONCLUSION**

For these reasons, the joint motion for approval of the infant compromise is granted without a hearing. The proposed settlement, attorney's fees, and disbursements are approved.

The letter motion to seal the infant compromise papers is granted for the reasons set out in the parties' letter. The Clerk of Court is directed to maintain ECF Nos. 58 and 58-1 to 58-28 under seal.

Unredacted versions of this Opinion & Order and the associated Infant Compromise Order will be filed separately under seal.

The Clerk of Court is kindly directed to close the gavels associated with ECF Nos. 57 and 58.

**SO ORDERED.**

DATED: White Plains, New York
October 30, 2026

VICTORIA REZNIK
United States Magistrate Judge